UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEDRA MERRIWEATHER,

                Plaintiff,                Case No. 2:18-cv-10664
                                              District Judge David M. Lawson
v.                                    Magistrate Judge Anthony P. Patti

UNITED STATES STEEL
CORPORATION,

                Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT UNITED STATES STEEL CORPORATION'S MOTION FOR SUMMARY JUDGMENT (DE 31)

**I.**     **RECOMMENDATION**: The Court should grant Defendant United States Steel Corporation's Motion for Summary Judgment. (DE 31.)

**II.**     **REPORT:**

    **A.**     **Procedural Background**

Plaintiff Nedra Merriweather, proceeding in *pro per*, filed this employment discrimination and retaliation case against her former employer, Defendant United States Steel Corporation ("Defendant" or "USS"), on February 26, 2018. (DE 1.) Plaintiff alleges that Defendant unlawfully terminated her because of her race and gender and because she engaged in protected activity, and that Defendant discriminated against her on the basis of her race and gender by not allowing her to

1

train and qualify for a job she requested.  (*Id.*)  Plaintiff asserts claims of race and gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and race discrimination and retaliation under 42 U.S.C. § 1981.  (DE 1.)  She seeks reinstatement, or an award of back pay, front pay and other compensatory damages, punitive damages, costs and attorney fees.  (*Id.*)

This matter comes before the Court on Defendant's motion for summary judgment, Plaintiff's amended response brief, and Defendant's reply brief, with supporting declarations.  (DEs 31, 32, 34, 35, 40-43.)  Defendant states that Plaintiff was discharged in April 2017 for threatening and abusive behavior toward several co-workers, after which her discharge was upheld in arbitration.  Defendant asserts that Plaintiff cannot establish a *prima facie* case of gender or race discrimination because she cannot show that her claimed failure to receive informal training was an adverse employment action under Title VII, that she was treated differently than similarly-situated persons outside her protected class, or that the decision-maker was predisposed to discriminate against African-Americans or women.  Defendant further contends that Plaintiff's retaliation claim fails because she cannot establish a causal connection between her claimed protected activity and her termination.  Defendant also argues that it has articulated

2

a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff has failed to show that this reason is a mere pretext for intentional discrimination.

Plaintiff opposes Defendant's motion.  She denies that she threatened or harassed any co-workers and instead contends that *she* was the person threatened and bullied by co-workers and management and that she was retaliated against for engaging in protected activities, including complaining about work sabotage, race discrimination, gender discrimination and sexual harassment.  Plaintiff's response contains numerous factual allegations in response to Defendant's motion, and is supported by her declaration and exhibits, but otherwise contains no legal argument or analysis of her claims.

In its reply brief, Defendant maintains that Plaintiff has failed to present any facts from which it can be inferred that she was subjected to race or gender discrimination or retaliation by Defendant or otherwise explain how the facts she recites add up to a viable claim, and that her Complaint should be dismissed in its entirety.

**B.    Factual Background**

**1.    Plaintiff's employment at USS**

Plaintiff was hired by Defendant at its Great Lakes Works ("GLW") facility on March 4, 2013 in the position of Utility Person (Labor Grade 1).  This position was in a bargaining unit represented by the United Steelworkers ("USW") Local

Union No. 1299 ("Union" or "Local 1299").  Upon being hired, Plaintiff received a copy of Defendant's policies, including its policies on Sexual Harassment, Discriminatory Harassment and Equal Employment Opportunity, as well as its General Safety & Plant Conduct Rules and Regulations.

On July 7, 2013, Plaintiff was selected through the bid process in the Local 1299 bargaining unit for the position of Utility Technician (Labor Grade 2) at GLW on the Continuous Galvanizing Line ("GCL").  This position, also referred to as a material handler, involves the operation of heavy equipment, including overhead electric cranes, to handle, transport and process product and material through the CGL.  Plaintiff was assigned to the swing shift, also known as the "B" turn.  She remained in this position until her discharge.

During her employment, Plaintiff was cited for several disciplinary incidents, including one incident involving a verbal altercation with a co-worker, Myra Rogan, in August 2015.  Rogan complained on August 6, 2015 that Plaintiff threatened her "that if I touched her that she was going to f*** me up & whoop my ass." (DE 31-13 at 2.)  Plaintiff admits that Rogan reported this threat, but claims that Rogan was lying.  (DE 31-20 at 41.)  This verbal altercation resulted in a five-day suspension for Plaintiff, issued on August 10, 2015.  Her other disciplinary incidents involved complaints of "unsatisfactory work" or "unjustified absence." (DE 31-11.)

### 2. Plaintiff requested and was offered the opportunity to seek "break-in" training for the Delivery Operator position in January 2017

Plaintiff states that she learned that there might be an opening in the Delivery Operator (Labor Grade 3) position on the CGL in late November or early December 2016, and, on January 2, 2017, she told Allen Blevins, CGL Area Coordinator, that she was interested in training as a Delivery Operator. She also submitted a Training Interest form that same day. (DE 31-15; DE 31-20 at 31.) The function of Delivery Operator is part of the Operating Technician I position, which would have been a promotion for Plaintiff. However, there was no vacancy in the Delivery Operating function in 2017 and USS had not indicated an interest in providing training for temporary vacancies in that function. (DE 31-2, ¶ 6.) Blevins told Plaintiff that he could not approve training for employees on an overtime basis for that position (because he did not have budgetary approval to do so), but that she was free to seek "break-in" training during her shift if her assigned work was completed and/or during periods of reduced operations, by going to the delivery "pulpit" area (where certain controls are located to move the steel coils) and observing the "B" turn Delivery Operator, Cathy Ferguson, on the job. (*Id.*, ¶¶ 6-7.) Ferguson, who Plaintiff admits was once a "very close friend" of hers (DE 31-20 at 8), also served as a Civil Rights Advocate for USS employees through Local 1299, which involved assisting employees (specifically including Plaintiff

5

several times) to file civil rights complaints with USS.  (DE 31-3, ¶¶ 5, 7-9.)
Blevins advised Ferguson to train Plaintiff as time allowed, and that it was up to
Plaintiff's shift foreman to approve Plaintiff's release from her normal duties for
that "break-in" training, based on operational needs.  (*Id.* ¶ 13; DE 31-2, ¶ 7.)

      Plaintiff shortly thereafter went to the delivery pulpit area and requested
training from Ferguson.  (DE 31-20 at 33.)  Ferguson advised Plaintiff that she
would need to ask the shift foreman to release her and that she needed a notepad
and the job qualification checklist to keep track of the various job functions as she
trained on them.  (*Id.*; DE 31-3, ¶ 14.)  Plaintiff returned to the pulpit area on
January 12, 2017, with the documents and again requested training.  (DE 31-20 at
33.)  Ferguson again told Plaintiff that she needed permission from her shift
foreman to leave her work area and to ensure her job assignments were covered.
Plaintiff argued with Ferguson that she did not need permission, but eventually
sought out her shift supervisor, Doug Geldmacher, who instructed Plaintiff to work
on "peels" until Blevins had finished a meeting.  (*Id.*; DE 31-3, ¶¶ 15-16, 23.)
Blevins confirmed with Plaintiff later that same shift that there was a backlog of
over 100 coils on the CGL that day and thus no time for break-in training.  (DE 31-
2, ¶ 9.)

Plaintiff testified that she never again requested Delivery Operator training after this time.  (DE 31-20 at 34.)[1]  She instead filed an internal civil rights complaint on January 13, 2017, accusing Blevins of discrimination.  (DE 31-16.) She later submitted the same complaint – but this time complaining that Ferguson, instead of Blevins, was discriminating against her – along with two other complaints (which are discussed below) via USS's Ethics Point ("EP") Website on February 27, 2017.

### 3.   USS investigates Plaintiff's complaints

Charles Mackinnon, a USS Labor Representative, investigated all three of Plaintiff's complaints, including reviewing all relevant materials and interviewing all relevant witnesses.  (DE 32-1, ¶¶ 4-5 and at 18-38.)

With regard to the complaint of discrimination (Case 4938), Mackinnon interviewed Plaintiff, Blevins and Ferguson, reviewed relevant materials, and found the complaint unsubstantiated because the investigation confirmed that neither Blevins nor Ferguson denied Plaintiff an opportunity to train but instead attempted to ensure that she had the necessary tools and permission to train on the Delivery Operator function.  Plaintiff had also complained that another co-worker,

---

[1] Plaintiff attempts to dispute this unequivocal deposition testimony in her response brief but, as Defendant correctly states, "a party cannot create a genuine issue of material fact by filing an affidavit, after a motion to summary judgment has been made, that essentially contradicts [her] earlier deposition testimony."  *See Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997).

7

Chris Feldt, was improperly trained and qualified as an entry operator in an effort to prevent Plaintiff and other Black/Female employees from training on the position, but Mackinnon found that allegation unsubstantiated because company records indicated the Feldt was properly trained and qualified on the Delivery Operator function as of January 7, 2015, two years before Plaintiff sought training. (DE 32-1, ¶¶ 7-8 and at 18-24.)

Defendant states that after Plaintiff did not train as a Delivery Operator with Ferguson, a white male co-worker assigned to a different shift, Jeff Davis, was trained by a different Delivery Operator, William Goode, in March 2017. Davis was subsequently qualified as a Delivery Operator by Blevins on March 8, 2017, when the Utility Technicians had caught up on their work and operational conditions permitted him to train (although he was never assigned to the position full-time and only worked a handful of shifts since becoming qualified). (DE 31-17; DE 31-2, ¶¶ 20-21.) Plaintiff filed a grievance regarding this on March 21, 2017, based on Davis's junior seniority, but this grievance was withdrawn by the Union on January 31, 2018. (DE 31-18.)

### 4. Defendant discovers threatening and abusive behavior by Plaintiff toward co-workers

In addition to her complaint of discrimination discussed above, Plaintiff also filed a complaint titled "Violence or Threat of Violence" regarding a January 16, 2017 incident between Davis and Geldmacher (Case 4939), and a complaint titled

8

"Sabotage or Vandalism" regarding a co-worker, Marlon Towns (Case 4941).

Mackinnon also investigated these complaints, including conducting multiple

interviews of Union members in the presence of Local 1299's Grievance

Chairman, Hawley Warren.  (DE 32-1, ¶¶ 5, 9-12,)

Mackinnon found Plaintiff's complaint in Case 4939 unsubstantiated

because, although his investigation revealed that Geldmacher and Davis were

involved in a verbal exchange regarding a work assignment on January 16, 2017 in

which some profanity was used, there was no evidence that any threats were made,

no evidence that Davis had refused a work assignment or failed to complete his

work, and in fact, both Davis (the alleged recipient of a threat) and a Jason

Batchelder (a witness to the exchange) expressly denied that any threat was ever

made.  (*Id.* ¶¶ 9-10 and at 26-30.)

Mackinnon further found the allegations in the second complaint, Case

4941, to be unsubstantiated, except for the allegation that Towns was witnessed

sleeping on the job, for which he received a warning.  (*Id.* ¶¶ 11-12 and at 32-38.)

Ferguson was interviewed on March 22, 2017, as part of the investigation of

these complaints, and she reported that, between January and March 2017: (1)

Plaintiff had made abusive and harassing comments to her, including saying "you

are f***ing stupid! You stupid ass!" and calling her a "lying, nasty white bitch";

(2) Plaintiff tried to intimidate her, such as staring at her without speaking; (3)

9

Plaintiff made veiled or implied threats of physical violence against her, such as "that bitch better watch her back I have friends outside;" and, (4) Plaintiff had forcefully thrown a case of water bottles in her vicinity, causing at least one of the bottles to break and spill, while also warning her not to "touch her shit." (DE 32-1, ¶ 13 and at 45-49.)

After Ferguson's interview, Grievance Chairman Warren stayed behind to speak with Mackinnon privately, and told him, "off the record," that he was personally concerned about Ferguson's safety because Plaintiff had told him she was going to "kick her [Ferguson's] ass," and that he had warned Ferguson to be careful around Plaintiff and when leaving work. (DE 32-1, ¶ 15.) Ferguson later confirmed in a second interview with Mackinnon that Warren had warned her to be careful around Plaintiff, and that her husband was escorting her to and from the plant before and after her shift because of Plaintiff's threats. (*Id.* ¶ 18.) Ferguson subsequently provided two written statements documenting Plaintiff's conduct. (DE 32-1 at 43, 45-48.) Mackinnon concluded that Plaintiff's reported comment to Ferguson that she "better watch her back I have friends outside," along with Warren's report, was a threat of physical violence or harm to Ferguson in violation of USS's Policy on the Prevention of Workplace Violence. (DE 32-1, ¶¶ 17, 19 and at 40-41.)

### 5. Defendant's continued investigation regarding Plaintiff's threats

10

On March 24, 2017, Defendant issued Plaintiff two five-day suspensions, one for "Making Threatening Statements" and one for "Harassment," temporarily removing her from the workplace while Mackinnon continued to investigate the matter.  As part of that process, Mackinnon interviewed, in the presence of a USW Local 1299 representative, USS employees Marlon Towns, Dallas Hughes, Angel Colon, Daniel Palazzolo, Andre Smith and Plaintiff.  According to Mackinnon, each witness (with the exception of Plaintiff) provided some degree of corroboration of Ferguson's allegations.  (DE 32-1, ¶¶ 19, 21-25 and at 50, 52; DE 42-3 at 35-53.)  During Plaintiff's March 29 interview with Mackinnon, Warren and Grievance Committeeman Bob Kemper, however, Plaintiff denied making any threats to Ferguson, using abusive language toward her, or attempting to intimidate her in any way; although Plaintiff admitted at her deposition that, "I told Mr. Warren that if I caught Cathy [Ferguson] messing with my lunch … I would kick her butt."  (DE 31-20 at 47.)  Mackinnon did not find Plaintiff's blanket denials credible, and thus extended her suspension so that the company's investigation could be completed.  (DE 32-1, ¶ 28.)

### 6.    Defendant terminates Plaintiff's employment

On April 5, 2017, after completing the investigation, Mackinnon made the decision to fire Plaintiff for "harassment" and "making threatening statements," based on his belief that Ferguson's report of threats of violence and abusive

conduct toward her by Plaintiff were credible; the report by Warren of a separate threat by Plaintiff about Ferguson; Plaintiff's prior five-day suspension for a verbal altercation involving a threat of violence toward another coworker (Rogan); and that two other co-workers reported that Plaintiff had threatened violence against other employees. (DE 31-11; DE 32-1, ¶¶ 29-30.)

### 7. Plaintiff files two grievances challenging her termination

After Plaintiff's discharge, two grievances were filed by the USW on her behalf contending that Defendant's decision to convert her two five-day suspensions into discharge was unjustified. These grievances proceeded through the grievance procedure, were denied at Step 2 and Step 3 of the grievance process (DE 32-1 at 57-66), and subsequently were denied at arbitration on December 18, 2017. (*Id.* at 68-77.) The arbitrator found that Ferguson's statements were "credible and established that [Plaintiff] was guilty of the charged offenses" and noted that Plaintiff "was a relatively short service employee with a poor disciplinary record" with "two written warnings, a 5-day suspension – for an employee altercation – and a 10-day suspension." (*Id.* at 77.) The arbitrator stated that Plaintiff "has had the benefit of progressive discipline, but has not reformed her behavior[,]" and found that "the Company had proper cause for discharge." (*Id.* at 77.)

Plaintiff then filed this lawsuit on February 26, 2018, alleging that

Defendant unlawfully terminated her because of her race and gender and because

she engaged in protected activity, and that Defendant discriminated against her by

not allowing her to train and qualify for the Delivery Operator position.  (DE 1.)

### C.   Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.*

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC*

*v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case . . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen her obligations under Rule 56.  Rather, "[t]he liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).  The Sixth Circuit has made clear that, when opposing

14

summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### D.    Discussion

#### 1.    Title VII and § 1981 Discrimination and Retaliation Claims

Plaintiff filed this lawsuit alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, based on race and gender, and in violation of 42 U.S.C. § 1981, based on race.  (DE 1, ¶¶ 71-87.)  Discrimination and retaliation claims under both statutes are analyzed under the same standards. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000) ("The elements of [a] prima facie case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981.").  "Under this framework, a plaintiff can prove racial [or gender] discrimination [or retaliation] by proffering either direct evidence or circumstantial evidence." *Tennial*, 840 F.3d at 303.  Where, as here, the claims are based on circumstantial evidence, the Court employs the burden-shifting framework set forth in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802-04 (1973).  *See also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (clarifying the *McDonnell Douglas* burden-shifting framework).

This begins with the requirement that a plaintiff establish a *prima facie* case of discrimination by showing that she: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) was either replaced by a person outside the protected class or treated differently than similarly-situated individuals outside the protected class.  *See Logan v. Denny's, Inc.*, 259 F.3d 558, 567 (6th Cir. 2001) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)).  To establish a prima facie case of retaliation under Title VII or § 1981, a plaintiff must show that: "(1) [s]he engaged in activity protected by Title VII; (2) [her] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citations omitted).

If a plaintiff establishes a *prima facie* case of discrimination or retaliation, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment decision.  *McDonnell Douglas*, 411 U.S. at 802. Finally, if the defendant offers such a reason, the burden returns to the plaintiff to

show that the proffered reason is merely a pretext for discrimination.  *Id.* at 804.

However, the burden of persuasion rests with the plaintiff at all times.  *Hunter v.*

*Sec'y of the Army*, 565 F.3d 986, 996 (6th Cir. 2009); *Laster*, 746 F.3d at 730

("Although the burden of production shifts between the parties, the plaintiff bears

the burden of persuasion throughout the process.").

### 2. Plaintiff cannot establish a *prima facie* case of race or gender discrimination

#### a. The claimed failure to receive informal training does not constitute an adverse employment action

Plaintiff claims that Defendant discriminated against her by allowing

coworkers outside her protected classes, but not her, to be trained as a Delivery

Operator (failure-to-train claim), and by terminating her employment because of

her race and gender (termination claim).  (DE 1, ¶¶ 71-87.)  Defendant concedes

that Plaintiff's termination constitutes an adverse employment action under Title

VII and § 1981, but argues that her alleged failure to be trained as a Delivery

Operator does not.  Defendant posits that the evidence demonstrates that Defendant

did not *deny* any training, but rather that it *approved* Plaintiff's request for

informal, on-the-job training from a co-worker, and that Plaintiff's failure to obtain

the training did not cost her a promotion or financial benefit.  Plaintiff agrees that

Blevins told her that she was free to seek training with Ferguson during her shift if

her work was caught up, but argues that Blevins and Ferguson kept her from being able to train.

An adverse employment action requires a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (citation omitted). The employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461 (6th Cir. 2000) (internal quotation marks omitted); *see also id.* at 462 ("*[D]e minimis* employment actions are not materially adverse and, thus, not actionable."). Rather, a "materially adverse change" usually includes "a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities…." *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999). Courts have held that for a failure to train to constitute an adverse action, an employee must show that "his inability to attend such training had [a] material impact on the terms and conditions of his employment." *Wheeler v. Chertoff*, No. C 08-1738 SBA, 2009 WL 2157548, at *6 (N.D. Cal. July 17, 2009) (citing *Shakelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999) (denial of employee training does not constitute an adverse employment action covered by Title VII where it does not tend to result in a change of

18

employment status, benefits or responsibilities)); *see also Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 710 (6th Cir. 2007) (holding that "deprivation of increased compensation as the result of a failure to train constitutes an adverse employment action"); *Clegg v. Arkansas Dep't Corr.*, 496 F.3d 922, 928 (8th Cir. 2007) (holding that denial of training does not constitute an adverse employment action absent a further showing that it "had any impact on [the employee's] eligibility for benefits such as a promotion or pay raise").

Defendant argues that the alleged failure to provide informal, on-the-job training to Plaintiff in this case does not constitute an adverse employment action under this definition. Defendant states that Plaintiff sought training for the Delivery Operator position, which Defendant subsequently approved. Plaintiff does not dispute this. (DE 31-20 at 31-32.) Plaintiff also admits that, after two attempts to train with Ferguson, which were denied based on work load (with the last denial on January 12, 2017), she never again requested training. (DE 31-20 at 34.) Importantly, Defendant has established that Plaintiff's failure to obtain training did not cost Plaintiff a promotion or other financial benefit, and Plaintiff has not disputed this or otherwise demonstrated that her failure to obtain this training had any impact on her employment status, benefits or responsibilities. Plaintiff has not shown that she would have been promoted to Delivery Operator, even with the training, and in fact admits that her co-workers who she alleges did

subsequently receive that training – Feldt, Rachel Aldini and Davis – were not promoted to Delivery Operator.  (DE 31-20 at 32, 65.)  As the Sixth Circuit explained in *Creggett v. Jefferson County Board of Education*, 491 F. App'x 561 (6th Cir. 2012), in finding that the plaintiff did not establish that failure to provide training was an adverse employment action:

> Creggett has proffered no evidence to suggest that either training was required or that failure to attend the training would result, or has resulted, in any demotion, loss of pay, loss of responsibility, or other materially adverse effect ….  Without evidence of this sort, mere denial of a supplemental training, even if other employees were allowed to attend the training, is not an adverse employment action.

*Creggett*, 491 F. App'x at 567 (citing *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 768 (6th Cir. 2008) ("Defendant's failure to provide plaintiff with extra training does not constitute an adverse employment action.")).  *See also Young v. CSL Plasma Inc.*, No. 15-cv-10080, 2016 WL 1259103, at *3 (E.D. Mich. Mar. 31, 2016) ("The 'mere denial of a supplemental training, even if other employees were allowed to attend the training, is not an adverse employment action,' unless 'failure to attend the training would result, or has resulted, in any demotion, loss of pay, loss of responsibility, or other materially adverse effect.'") (quoting *Creggett*).

The Undersigned finds that Plaintiff has failed to demonstrate that her claimed failure to received informal training for the Delivery Operator position "had [a] material impact on the terms and conditions of [her] employment" or otherwise resulted in a loss of pay, demotion, or loss of responsibility, and thus she

20

has not met her burden to show that the alleged failure to train constitutes an adverse employment action necessary for her race and gender discrimination claims. *See Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 345 (6th Cir. 2008) (finding plaintiff's "conclusory assertions" that training "'would have … allow[ed] [her] to be able to be promoted to another position … when and if something opened up'" insufficient to state a *prima facie* claim of discrimination and survive summary judgment). Defendant accordingly is entitled to summary judgment on Plaintiff's "failure-to-train" claim.

> **b.** **Plaintiff has not shown that she was treated differently than similarly situated individuals outside of her protected class**

Defendant also argues that Plaintiff cannot establish her *prima facie* case of race or gender discrimination because she cannot prove that a similarly-situated person outside of her protected class(es) received more favorable treatment. Specifically, as to her training claim, Defendant states that Plaintiff was not similarly situated to the employees she complains of, Feldt, Aldini and Davis. And, as to her discharge, Defendant states that Plaintiff has not shown that any similarly-situated employee made credible threats toward another employee similar to those found to be made by Plaintiff, who was not discharged.

To satisfy the similarly situated requirement, a plaintiff must show that the comparator employee is similar "in all of the relevant aspects." *Ercegovich v.*

*Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).  The Sixth

Circuit has described the "similarly situated" element as follows:

> To be deemed "similarly situated," the individuals with whom the
> plaintiff seeks to compare his/her treatment must have dealt with the
> same supervisor, have been subject to the same standards and engaged
> in the same conduct without such differentiating or mitigating
> circumstances that would distinguish their conduct or the employer's
> treatment of them for it.

*Mitchell*, 964 F.2d at 583 (internal quotations and citations removed).

### i.      Training

Even if (contrary to the finding above) Plaintiff's claimed failure to receive

informal training for the Delivery Operator position did constitute an adverse

action, Plaintiff has not demonstrated that she was treated differently than any

other similarly-situated employee regarding the training she sought.  Plaintiff

admits that she was granted the right to seek "break-in" training for the Delivery

Operator position, twice sought training but was told that she needed supervisor

approval first to ensure her work was caught up, and that she stopped seeking that

training after January 12, 2017.  (DE 31-20 at 32-34.)  Plaintiff asserts, without any

explanation, that Davis, Feldt and Aldini were similarly-situated employees who

received training for the Delivery Operator position.  (DE 41, ¶¶ 20-21.)  However,

Defendant presented undisputed evidence that Feldt qualified as a Delivery

Operator two years *before* Plaintiff requested training, and thus he was not

similarly situated to Plaintiff.  (DE 31-2 at 10-11; DE 32-1, ¶ 8.)  Davis, who was

assigned to a different "turn" or shift than Plaintiff, received training two months *after* Plaintiff admits she stopped seeking training, and after "Utility Technicians had gotten caught up on their work," and thus he was not similarly situated to Plaintiff.  (DE 31-2, ¶¶ 20-21; DE 31-17.)  Plaintiff presents no evidence, other than her conclusory allegations, that Aldini received "break-in" training for the Delivery Operator position without her supervisor's approval and/or without being caught up with her work, and it is undisputed that Aldini was never qualified as a Delivery Operator in any event.  (DE 31-20 at 32, 65.)  Accordingly, Plaintiff has failed to meet her burden to prove that a similarly-situated person outside of her protected class(es) received more favorable treatment with regard to her training claim, and Defendant is entitled to summary judgment.  *See Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 147 (6th Cir. 2007) (Plaintiff's "generalized and vague allegations that other non-minority casual employees were treated better than he was is not enough to make out a prima facie showing that" he was discriminated against.).

### ii.    Discharge

As for her discharge claim, Plaintiff has presented no evidence that any similarly-situated employee made credible threats toward another employee and was not discharged.  Plaintiff was discharged for harassment and making threatening statements in violation of USS's Policy on the Prevention of

Workplace Violence.  (DE 31-11; DE 32-1, ¶¶ 29-30.)  Defendant has presented

uncontested evidence that it has consistently enforced this workplace violence

policy, resulting in the discharge of six other USS employees at GLW for similar

threating conduct since 2014, including three white males, two black males, and a

Hispanic male.  (DE 32-1, ¶¶ 39-40.)  While Plaintiff had complained (in Case

4939) that she witnessed a threat of violence by Geldmacher to Davis 42 days prior

(that Geldmacher allegedly threatened to "kick (Davis's) ass" yet he was not

disciplined or discharged), this claim was investigated and found to be

unsubstantiated.  Defendant confirmed, upon investigation, that there was no

evidence that any threats were made, as Davis and a witness to the alleged threat

both expressly denied that Davis was threatened.  In contrast, Ferguson reported

that Plaintiff subjected her to multiple instances of threatening and abusive

conduct, and Ferguson's statements have been corroborated by a number of other

witnesses.  In other words, Plaintiff's threatening behavior was corroborated by

both the victim and others, *and thus deemed credible*, whereas the alleged threat by

Geldmacher was not.

Accordingly, Plaintiff fails to demonstrate that she and Geldmacher

"engaged in the same conduct without such differentiating or mitigating

circumstances that would distinguish their conduct or the employer's treatment of

them for it," *see Mitchell*, 964 F.2d at 583, and thus fails to establish that a

similarly-situated employee made credible threats toward another employee and was treated differently than she with regard to her discharge.  Defendant is therefore entitled to summary judgment on Plaintiff's discrimination claims.

> ### c.   Alternatively, Plaintiff has not shown that the decision-maker for her discharge, Mackinnon, was predisposed to discriminate against African-Americans or women

Defendant argues, alternatively, that Plaintiff has no direct evidence that the decision-maker for her discharge was predisposed to discriminate against African Americans or women.  An alternative method for establishing a case of discrimination is to present credible, direct evidence of discriminatory intent on the part of the decision-makers.  *Perkins v. Regents of Univ. of Mich.*, 934 F.Supp. 857, 863 (E.D. Mich. 1996).  To establish a claim of discrimination under such an intentional discrimination theory, the plaintiff must show: (1) that she was a member of a protected class; (2) that she was discharged; and, (3) that the person discharging her was (a) predisposed to discriminate against persons in the protected class and (b) actually acted on that predisposition in discharging her. *Thomas v. Hoyt, Brumm & Link, Inc.*, 910 F.Supp. 1280, 1288 (E.D. Mich. 1994).

Here, it is undisputed that Mackinnon was the decision-maker in Plaintiff's discharge.  (DE 31-20 at 65; DE 32-1, ¶ 29.)  Mackinnon stated that he based his decision on the information obtained from his review of relevant documents and on the witnesses he interviewed, including Ferguson, the separate report of a threat

from Warren, and Plaintiff's past disciplinary record.  (DE 32-1, ¶¶ 29-30.)

Neither Blevins nor Ferguson (the two individuals of whom Plaintiff complains in

her complaints of discrimination to USS) were involved in the decision to

terminate Plaintiff.  (*Id.*)  Plaintiff has simply presented no evidence that

Mackinnon was biased or "predisposed" to discriminate against African-

Americans or women, or that he "actually acted on that predisposition" in deciding

to terminate Plaintiff's employment.  (*See* DE 41, ¶ 22; DE 31-20 at 9, 65.)  To the

contrary, the evidence is undisputed that Mackinnon based his decision solely on

the information gleaned from the investigation, in conjunction with Plaintiff's past

record.  Accordingly, Plaintiff cannot establish direct evidence of discrimination

with regard to her discharge.

### 3.     Prima facie case of retaliation

Plaintiff alleges that Defendant terminated her in retaliation for engaging in

protected activities by reporting and opposing discrimination based on sex and

race.  As stated above, to establish a *prima facie* case of retaliation under Title VII

or § 1981, a plaintiff must show that: "(1) [s]he engaged in activity protected by

Title VII; (2) [her] exercise of such protected activity was known by the defendant;

(3) thereafter, the defendant took an action that was 'materially adverse' to the

plaintiff; and (4) a causal connection existed between the protected activity and the

materially adverse action."  *Laster*, 746 F.3d at 730 (citations omitted).  Defendant

contends that Plaintiff cannot satisfy the fourth element of her *prima facie* claim of retaliation – a causal connection between the protected activity and the adverse action.

"To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that [her] protected activity was the likely reason for the adverse action." *Henderson v. Chrysler Grp., LLC*, 610 F. App'x 488, 494 (6th Cir. 2015) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007)). "'Title VII retaliation claims must be proved according to traditional principles of but-for causation[,]'" which in this case requires proof that she would not have been subject to the employment actions at issue "if she had not made her charge[s]." *E.E.O.C. v. Ford Motor Co.*, 782 F3d 753, 770 (6th Cir. 2015); *Williams v. Serra Chevrolet Automotive, LLC*, 4 F.Supp.3d 865, 877 (E.D. Mich. 2014) (quoting *University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 361 (2013)). This is a tall order on this record, involving an investigation which displayed corroborated, credible evidence of Plaintiff having threatened a co-worker with physical harm.

Generally, while "a temporal connection [between the protected activity and the adverse action] coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection," *see Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006), "temporal proximity *alone* is

not enough to allow a reasonable inference of 'but-for' causation, an essential element of Plaintiff's Title VII … retaliation claims." *See Williams*, 4 F.Supp.3d at 879 (emphasis added); *see also Mathews v. Massage Green LLC*, No. 14-cv-13040, 2016 WL 1242354, at *16 & n.10 (E.D. Mich. Mar. 30, 2016) (collecting cases holding that "but for" causation is required to make out a *prima facie* retaliation claim under Title VII). Rather, courts have "always looked at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400-01 (6th Cir. 2010). Plaintiff must offer some "other indicia of retaliatory conduct" giving rise to a finding of a causal connection. *Id.* (quoting *Randolph*, 453 F.3d at 737); *see also Williams*, 4 F.Supp.3d at 879.

Defendant has presented proof that Plaintiff was first suspended in March 2017, and then discharged two weeks later, in April 2017, for threats of violence in violation of USS's established anti-violence policy, following a thorough investigation which revealed credible evidence that Plaintiff had made multiple threats of violence toward other employees. In response, Plaintiff has presented nothing more than her unsupported, conclusory allegations that the "but for" reason for her discharge was her multiple complaints and grievances in 2013 to 2016. In fact, Plaintiff admits that Defendant acted on two of her complaints and discharged the offending employees. Plaintiff has failed to present evidence that

28

"protected activity was the likely reason for" her discharge, and thus has failed to establish a *prima facie* case of retaliation.  *See Henderson*, 610 F. App'x at 494; *Green v. Burton Rubber Processing, Inc.*, 30 F. App'x 466, 471 (6th Cir. 2002) ("Because we conclude that Green was terminated because of his threats of violence, we also conclude that he cannot establish a prima facie case of retaliatory discharge[.]").  Moreover, under the "totality of the circumstances," an inference of retaliatory motive [cannot] be drawn."  *Vereecke*, 609 F.3d at 400-01.

4. **Alternatively, Defendant proffered a legitimate, non-discriminatory reason for Plaintiff's termination and Plaintiff has no evidence of pretext**

a. **Defendant's legitimate, non-discriminatory reason for Plaintiff's discharge**

If the plaintiff establishes a *prima facie* case of discrimination or retaliation, "the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action."  *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010).  The employer need only *articulate* a nondiscriminatory rationale; it need not prove it.  *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996).  Defendant here has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination:  Ferguson's credible report that Plaintiff had threatened her with physical violence; Warren's confirmation of the same; confirmed reports that she had threatened other co-workers; and that these threats violated USS's established policy against workplace

29

violence.  A threat of violence is a legitimate, nondiscriminatory reason for termination which would support a finding that unlawful discrimination was not the cause of the employment action.  *See, e.g., Blackshear v. Interstate Brands Corp.*, 495 F. App'x 613, 618 (6th Cir. 2012) (defendant met its burden of presenting a legitimate, nondiscriminatory reason for terminating plaintiff through evidence that it discharged her because her conduct violated the Workplace Violence Policy); *Bormuth v. Dahlem Conservatory*, 837 F.Supp.2d 667, 675 (E.D. Mich. 2011) ("[C]ourts have held that violent threats are a [legitimate] non-discriminatory reason[.]").  Defendant thus has met its burden of articulation.

### b.      Plaintiff cannot demonstrate pretext

Plaintiff must show that Defendant's explanation for her termination was a mere pretext for intentional discrimination and/or retaliation.  *McDonnell Douglas*, 411 U.S. at 804.  To prove pretext, Plaintiff must show that Defendant's proffered reasons: (1) had no basis in fact; (2) did not actually motivate the challenged conduct; or, (3) were insufficient to motivate the challenged conduct.  *Grace v. USCAR & Bartech Tech. Servs., LLC*, 521 F.3d 655, 677 (6th Cir. 2008). "Whichever method the plaintiff employs, [s]he always bears the burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant[] intentionally discriminated against [her]."  *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir.

2012) (quoting *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011)).

"[A] reason cannot … be a pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Seeger*, 681 F.3d at 285 (citation omitted, emphases added).

To challenge whether the reason had a basis in fact, a plaintiff must do more than allege a dispute over the facts upon which her discharge was based. *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2009). Rather, a plaintiff must put forth facts to demonstrate that the employer did not "honestly believe in the proffered non-discriminatory reason for its adverse employment action." *Id.* The key inquiry is whether the employer made a "reasonably informed and considered decision," not whether the decisional process was optimal or "left no stone unturned." *Caterpillar*, 496 F.3d at 598-99 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).

Plaintiff did not argue in her response brief that the legitimate, non-discriminatory reasons articulated by Defendant for her discharge were a pretext for discrimination or retaliation, other than her wholly conclusory assertion that "[t]he evidence of pretext in this case is compelling." (DE 41 at 4.) However, Plaintiff's mere denials of making the threats, or her personal belief that she should not have been terminated, are insufficient to show pretext. Rather, she must put forth facts to demonstrate that the employer did not "honestly believe in the

31

proffered non-discriminatory reason for its adverse employment action."
*Braithwaite*, 258 F.3d at 494.  "An employer's honest belief in a proffered reason
for a challenged employment decision will be upheld against a charge of pretext as
long as the employer can identify particularized facts for its honest belief."
*Sanders v. Kettering Univ.*, 411 F. App'x 771, 775 (6th Cir. 2010).

Here, the employer has done so.  Defendant has presented compelling
evidence that it made a "reasonably informed and considered decision" when it
terminated Plaintiff for violation of its workplace violence policy, and I find that
there is no evidence of pretext.  *See Caterpillar*, 496 F.3d at 598-99.  Defendant
provided evidence that it made the decision to terminate Plaintiff only after it
conducted a detailed and thorough investigation, reviewed relevant records and
interviewed numerous witnesses who describing many incidents of abusive and
threatening conduct by Plaintiff, including a corroborating statement from the
Union Grievance Chairmen Warren who expressed concern for Ferguson's safety
due to Plaintiff's threat to "kick her [Ferguson's] ass," as well as statements by
three other witnesses separately reporting some sort of violent threat by Plaintiff.
In addition, Plaintiff had been previously disciplined (a 5-day suspension) for a
complaint of a violent threat against a different coworker two years prior.  Plaintiff
has failed to present any evidence that Defendant's stated reason for terminating
her employment did not actually motivate Defendant, or that Plaintiff's allegedly

threatening behavior, in violation of Defendant's workplace violence policy, was an insufficient reason to terminate her employment.  In fact, Plaintiff admits that, if she made threats as reported by Ferguson and Rogan, she could be discharged and that she was aware Defendant has a policy against violence in the workplace.  (DE 31-20 at 48.)  Even if she did not actually make such threats, the evidence is uncontroverted that Defendant had reason to believe that she had, in fact did believe it, and was motivated by that belief in terminating her employment.

In sum, Defendant has presented ample evidence that it held an honest belief that Plaintiff had engaged in threatening and abusive conduct that warranted her discharge, and Plaintiff has put forth no evidence demonstrating otherwise. Plaintiff, therefore, has failed to present evidence sufficient to establish that Defendant's proffered reasons for her termination were pretext for discrimination. Defendant is entitled to summary judgment.

### E.      Conclusion

Defendant United States Steel's motion for summary judgment (DE 31) should be **GRANTED** and Plaintiff's claims should be **DISMISSED with prejudice**.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 19, 2019                s/*Anthony P. Patti*

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

34